SAUNDERS, Judge.
This is an appeal brought by Vernon and Germaine Hobaek, plaintiffs and appellants, from a judgment in favor of Vernon Hobaek (Hobaek) in the amount of $76,216.00 and in favor of Germaine Hobaek in the amount of $5,000.00.[1]
Plaintiffs contend that the jury erred in awarding them inadequate damages. We agree and amend the trial court judgment accordingly.
This accident arises out of an injury suffered by Vernon Hobaek at a KMart store in Lafayette, Louisiana, on February 4, 1991, when a metal toolbox fell from a shelf, hitting Hobaek on the head and upper back.
After trial on the merits, the jury found in favor of the Hobaeks. Plaintiffs appeal, assigning the following as error:
1. The jury abused its discretion by only awarding [$10,000.00] for past and fu *1260 ture physical and mental pain and suffering when the plaintiff was required to undergo a L5-S1 bilateral diskectomy and fusion as a result of the February 4, 1991, accident at K-Mart.
2. The jury abused its discretion by failing to award any damages when the uncontradicted testimony of the only physician to testify at trial that the plaintiff was left with a 20% percent anatomical impairment of his body following the low back surgery.
3. The jury abused its discretion by only awarding past lost wages of $18,000.00 when the uncontradicted testimony at trial showed that the plaintiff was not discharged to any type of work for 1 ⅝ years after the July, 1991, back surgery and the uncontradicted testimony of the economic expert at trial stated that the past lost wages would total $60,979.00.
4. The jury abused its discretion by only awarding future lost wages of $20,000.00 when the treating orthopedic surgeon said the plaintiff was capable of [manual] work prior to the February 4, 1991, K-Mart accident and only capable of light work after the accident.

FACTS

On February 4, 1991, Hoback was employed by S.G. Adams, Inc., doing business as Junior Food Mart in South Louisiana, as an area supervisor assigned to five stores. Part of his responsibilities included purchasing supplies from various retail outlets. On the day of the accident, Hoback was at KMart in Lafayette, Louisiana, on company business. He was leaning over looking at cans of chemical products when a fifty (50) to seventy (70) pound Tuff Bin toolbox positioned on an eight (8) foot tall shelf, fell and struck Hoback on the back of his head and lower back, throwing him into the shelf and to the ground.
Two female KMart employees came to his aid. Larry Jackson, KMart’s loss prevention manager, filled out an accident report stating that Hoback sustained a long red mark on his lower back. Hobaek’s wife was called to the scene, at which time she took him to the emergency room at Our Lady of Lourdes in Lafayette, Louisiana.
At Our Lady of Lourdes, X-rays were taken and Hoback was told to contact his family physician if the pain in his head, neck and lower back persisted. Hoback had previously been treated by Dr. Louis Blanda, an orthopedist, for a pre-existing low back condition and subsequently returned to see Dr. Blanda on February 7, 1991. At this time, Hoback complained of low back pain, recurrent pain down his right leg with numbness into his big toe, and neck stiffness.
Dr. Blanda examined Hoback finding positive physical findings and began with conservative treatment. Eventually, Dr. Blanda ordered a cervical and lumbar MRI in March of 1991, since Hoback’s condition was beginning to worsen. Dr. Blanda reported that Hoback had increased pain into his legs, his left leg was weakening and numb, in addition to Hoback having some bladder involvement.
Dr. Blanda performed an MRI and CT scan in March of 1991, which revealed that Hoback’s L5-S1 disc had an uneontained herniation that was actually extruded.[2] This finding was significant in that a previous MRI performed in 1988 had not described an extruded disc, but only a small central herniation with a calcification.
Hoback continued to have objective findings such as muscle spasm in his neck and progressive neurological deficit which caused Dr. Blanda to recommend and ultimately perform a bilateral diskectomy and fusion of the L5-S1 level in July of 1991.

DISCUSSION

I. Pain, Suffering and Disability:

After trial, the jury awarded plaintiff medical expenses of $28,216.00 in addition to *1261 $10,000.00 in past physical and mental pain and suffering. The jury did not make any award for future physical and mental pain and suffering or disability. Insofar as the facts pertaining to an award for these categories are intermingled, we will discuss them together.
Defendant contends that the jury awarded plaintiff all of his medical expenses and only $10,000.00 in past pain and suffering, but no award for future pain and suffering or disability, because the jury felt that Hoback was no more disabled after the February 4,1991, accident than he was prior to the accident. This contention is based upon the fact that plaintiff, prior to the accident of February 4, 1991, was involved in a previous work-related injury on March 28, 1988, while working for Circle K Corporation. Subsequent to his 1988 injury, Hoback was treated by Dr. Blan-da beginning on May 16, 1988. His treatment was non-surgical in nature. Dr. Blan-da’s diagnosis, based on CT and MRI scans, revealed that Hoback had a degenerative disc and a small central protrusion of this disc, more accurately described as a mild disc herniation.
In 1988, Dr. Blanda obtained several additional opinions, one from a Lafayette neurosurgeon, Dr. Stephen Goldware, and another from Dr. Gregory Gidman, an orthopedist. It was determined that Hoback was not a surgical candidate at that point and Hoback was treated conservatively with physical therapy. Dr. Blanda explained that Hoback did not have any neurological deficit which would have required surgery. Additionally, Dr. Blanda explained that because Hoback’s pain was improving with conservative treatment, the doctors decided not to operate on his lower back. Dr. Blanda also testified that in 1988, he was not opposed to Hoback returning to light to medium work as long as Hoback was not having problems.
Dr. Blanda explained that a herniation of a disc is when the nucleus goes through the ligament. He testified that there are different degrees of herniation and that it is possible to have a contained or uncontained herniation. A contained herniation is defined as where the nucleus bulges partially through the ligament, but is still contained inside the disc base and inside the ligament. Dr. Blan-da added that problems occur when a disc herniates and produces pain and pressure on nerve roots giving a patient neurological deficits. He explained Hobaek’s 1988 injury as a bulging disc, mildly protruding with contained herniation.
Dr. Blanda stated that there was a difference in Hoback’s back between the time when he first treated Hoback in 1988 and when he subsequently treated Hoback after the February 1991 injury. He stated that Hoback’s physical symptoms were worse and, in comparing the 1988 and 1991 MRI scans of Hobaek’s disc, he found that in 1991, the disc was no longer contained as it had been prior to the toolbox falling on Hoback. In 1991, the disc was actually extruded, i.e., part of the nucleus material had gone through the ligaments and was no longer contained within the disc. Dr. Blanda explained that one of the reasons Hoback was having increased back pain and increased pain down his leg was due to the worsening of his disc herniation.
Dr. Blanda emphatically stated that there was noticeable change in the two MRI’s performed on Hoback. He concluded that the second injury to Hoback was compatible with a box falling upon him and stated that any type of blow or trauma that causes a sudden unpredicted force on the back can have an effect on an already weakened or injured disc. He stated that after the February 1991 accident, Hoback had objective signs, both physically and on his diagnostic studies which could not be faked or fabricated.
In summary, Dr. Blanda stated that he felt as though the accident in February of 1991 caused a worsening of Hoback’s disc herniation and was probably the reason that Mr. Hoback had to have the back surgery performed in July of 1991.
Subsequent to the July 1991 bilateral diskectomy and fusion, Dr. Blanda testified that Hoback’s condition was improved and *1262 his X-rays revealed that the fusion was stable. He explained that it takes approximately a year and a half to achieve full maturity of a bone graft and that Hoback’s bone graft at the time of trial was not yet completely matured.
Finally, as to Hoback’s disability, Dr. Blan-da indicated that this type of injury and surgery left Hobaek with a 20% anatomical impairment rating. He explained that this rating means that Hoback’s body is not as it was before his surgery. Dr. Blanda specifically stated that the surgery he performed in July of 1991 was necessitated by the February, 1991, accident at KMart. He stated that because Hobaek was 34 years old at the time of the accident, wear and tear of his back was not a factor. Additionally, his back was apparently not causing him any particular problem prior to the accident. Rather, the February 1991 injury caused Hoback’s back symptoms to reoccur.
Willard Ralph Stuart, general manager of S.G. Adams, Inc., testified that he was Ho-back’s superior and that Hobaek was a valued employee. Stuart testified that Hobaek worked for S.G. Adams, Inc. from April of 1990 through February 4, 1991, and that during Hobaek’s period of employment, Ho-back had no problems performing his job as area supervisor for S.G. Adams, Inc.
Looking at the individual circumstances of the case before us, we find that the jury abused its discretion in making its award. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3d Cir.), writ denied, 565 So.2d 450 (La.1990); Reck v. Stevens, 373 So.2d 498 (La.1979). In reviewing past awards for similar injuries while at the same time realizing that no two cases are ever truly alike, we find that the lowest amount which the jury could have reasonably awarded plaintiff for past and present mental and physical pain and suffering and disability was $150,000.00. See Doran v. Clearview Supermarket, 562 So.2d 961 (La.App. 5th Cir.), writs denied, 568 So.2d 1062, 1064 (La.1990); Perez v. State, through DOTD, 578 So.2d 1199 (La.App. 4th Cir.), writ denied, 581 So.2d 706 (La.1991); Arruebarrena v. Boh Bros. Const. Co., 539 So.2d 78 (La.App. 4th Cir.1989) (general damage awards of $225,000.00 to $315,725.00 affirmed in cases involving plaintiffs with prior back surgeries and back injuries aggravated by accident).

II. Loss of Wage/Earning Capacitg:

Plaintiffs also assign as error the jury awards of past lost wages of $18,000.00 and $20,000.00 for loss of earning capacity or future lost wages. We find that the award which the jury made for past lost wages is inadequate and find that the amount of $38,-000.00 more closely approximates the plaintiffs past lost earnings, as shown by the record.
Hoback’s work and wage earning history spanned a time period from 1986 through February 4, 1991. In 1986, Hobaek earned $26,150.00; in 1987, he earned $25,967.53. Due to the back injury discussed above, Ho-baek worked only three (3) months in 1988, earning $8,292.16, and was unemployed from March of 1988 until April of 1990. During the nine (9) months of 1990 in which plaintiff was employed by S.G. Adams, Inc., plaintiff earned $14,694.00. Additionally, during January of 1991, Hobaek earned $3,237.00.
Dr. Roy Douglas Womack, an economist, testified that Hobaek had sustained lost wages from February 4, 1991, to the date of trial, November 4, 1992, in the amount of $60,979.00. It appears from the record, that the economist based all of his calculations regarding wage loss on a single month’s employment in 1991, at which time Hobaek had earned $3,237.50. We find this basis of calculation inaccurate and find that using calculations based upon the ten (10) month period prior to Hoback’s accident and extending these figures to arrive at a twelve month average annual salary would be the more correct method.
During the ten (10) months preceding the accident, plaintiff earned $14,694.00 in 1990 and $3,237.00 in January of 1991, for a ten *1263 (10) month total of $17,931.00 or $1,793.00 per month. Extending this average to cover a twelve (12) month period, plaintiff earned an average annual salary of $21,517.00. Adjusting these figures to cover the twenty-one (21) month period in which plaintiff lost earnings after his February 4, 1991, injury up until the time of trial in early November of 1992 ($1,793.00 x 21 mo.), we find that an award of $38,000.00 would be appropriate for past lost wages.
The jury also made an award of future wage loss to Hoback of $20,000.00. Among the factors to be considered in determining the amount for future economic loss are the plaintiff’s physical condition prior to the accident, his past work record as to consistent employment and amount of earnings, and the probability that the plaintiff would have continued to earn wages over the remainder of his work life as he had in the past, had he not sustained the injury. See Wallace v. Slidell Memorial Hosp., 509 So.2d 69 (La.App. 1st Cir.1987); Jaffarzad v. Jones Truck Lines, Inc., supra, 561 So.2d at 156. We find that the jury abused its discretion and made an inadequate award to Hoback in awarding only $20,000.00 in future lost wages and diminished earning capacity.
Dr. Blanda testified that Hoback was not capable of going back to any type of manual work, at the time of trial, because the fusion was not fully mature. He testified that assuming the fusion solidified, Hoback’s back motion would be restricted to light-duty work, meaning 10 to 20 pounds of lifting on a non-repetitive basis, not sitting or standing too long, not driving any vehicle or operating any vehicle that has a lot of vibratory stress and not lifting anything over 20 pounds on a permanent basis.
Dr. John Grimes, a vocational rehabilitation expert, stated that he evaluated Hoback regarding his future employability. Dr. Grimes classified Hoback’s previous work at Junior Food Mart as moderate to heavy in terms of exertional demands. Based on the assumption that Hoback would be restricted to light-duty work, Dr. Grimes testified that Hoback would not be able to go back to his previous employment as an area supervisor for S.G. Adams, Inc. Dr. Grimes, however, did feel that Hoback would be a very good candidate for a return to work once he was medically discharged and able to do light-duty work.
Dr. Grimes testified that Hoback, when released, would initially earn between minimum wage and $7.00 per hour, although Ho-back had the potential to make up to $10.00 per hour. He also testified that, assuming a good fusion, Dr. Blanda would discharge Ho-back in January of 1993, at which time Ho-back could return to light-duty work. He added that Hoback, when released to work, would obtain work within two (2) months in the $5.00 to $7.00 hour range and within a year, would probably move up toward the higher range of approximately $10.00 per hour.
Dr. Womack testified that Hobaek’s total future lost wages from the date of trial forward would be $219,293.00 based upon Ho-back returning to work at $10.00 per hour. This calculation was based upon Dr. Wom-ack’s earlier calculation of Hoback’s past lost wages of $60,979.00 for a twenty-one month period or over $33,000.00 per year.
Insofar as we earlier rejected $33,000.00 as an accurate annual wage, we have recomputed Hoback’s loss of earning capacity based upon an average annual salary of $22,000.00. As this figure is two-thirds (⅜) of Womack’s calculated annual wage, Hoback’s loss of earning capacity would also be two-thirds (¾) of Dr. Womack’s estimate of $220,000.00, or a projected future loss of earnings of approximately $147,000.00. As such, we amend the judgment of the trial court to reflect future lost earnings of $147,000.00.

DECREE

Based upon the foregoing, the judgment of the trial comí is hereby amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, VERNON HOBACK, *1264 and against the defendant, KMART CORPORATION, in the total amount of THREE HUNDRED SIXTY-THREE THOUSAND TWO HUNDRED SIXTEEN AND NO/lOO ($363,216.00) DOLLARS, with legal interest from date of judicial demand until paid, subject to the apportionment to intervenor, LOUISIANA INSURANCE GUARANTY ASSOCIATION, under LSA-R.S. 23:1103, as set forth below.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, GERMAINE HOBACK, and against defendant, KMART CORPORATION, in the total amount of FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS, with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the LOUISIANA INSURANCE GUARANTY ASSOCIATION and against defendant, KMART CORPORATION, in the sum of TWENTY-ONE THOUSAND NINE HUNDRED NINETY-SIX AND NO/100 ($21,996.00) DOLLARS, representing past compensation benefits paid by intervenor, LOUISIANA INSURANCE GUARANTY ASSOCIATION, together with legal interest on such amount from the date of intervenor’s judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that such portion of the amount of the judgment herein in favor of VERNON HOBACK, which exceeds the amount which LOUISIANA INSURANCE GUARANTY ASSOCIATION is entitled to be paid under the apportionment is assessed in favor of VERNON HOBACK and upon payment thereof to him, in accordance with LSA-R.S. 23:1103, the liability of LOUISIANA INSURANCE GUARANTY ASSOCIATION for future workers’ compensation benefits shall cease for such part of compensation benefits due, less such deductions therefrom as may be appropriate with the issue of such deductions reserved fpr further proceedings herein, if necessary.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that LOUISIANA INSURANCE GUARANTY ASSOCIATION is entitled to a credit, in accordance with law, up to the sum of $28,216.00 for medical expenses already incurred but un-reimbursed by LOUISIANA INSURANCE GUARANTY ASSOCIATION.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that LOUISIANA INSURANCE GUARANTY ASSOCIATION is entitled to credit against future medical expenses and future compensation benefits in accordance with law.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiffs, VERNON HOBACK and GERMAINE HOBACK, and the intervenor, LOUISIANA INSURANCE GUARANTY ASSOCIATION, reserve all rights for further proceedings herein, if necessary, to determine the assessment of the amount of attorney fees pursuant to Louisiana law.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, KMART CORPORATION, be cast with all costs of these proceedings both at trial and on appeal, including the following expert fees and Court Reporter fees:
(1) Dr. Louis Blanda.$750.00
(2) R. Douglas Womack.$150.00
(3) John Grimes.$200.00
(4) Court Reporter for transcribing trial testimony... $375.00
AFFIRMED AS AMENDED AND RENDERED.

. LIGA intervened on behalf of Vernon Hoback’s employer’s workers' compensation insurer for reimbursement of and credit for past and future benefits due Hobaek.

. An extruded disc is present when part of the disc material has gone through the ligaments and is no longer a contained herniation.