680 So.2d 1189 (1996)
Keith W. MARCEAUX, et ux, Plaintiffs-Appellants,
v.
Denny Wayne GIBBS, et al, Defendants-Appellees.
No. 95-1397.
Court of Appeal of Louisiana, Third Circuit.
August 14, 1996.
Rehearing Denied October 25, 1996.
*1190 Andre Doguet, Rayne, for Keith W. Marceaux et ux.
Milo Addison Nickel Jr., Lake Charles, for Denny Wayne Gibbs et al.
Homer Edward Barousse Jr., Crowley, for Kenneth Goss, Sheriff of Acadia.
Thomas Keith Regan, Crowley, for Town of Iota Acadia Parish.
Before DOUCET, C.J., and YELVERTON, THIBODEAUX, SAUNDERS and AMY, JJ.
SAUNDERS, Judge.
Questions presented for our review include whether a party injured by the negligence of an escaped convict may recover the full amount of damages from the inmate's custodians, and whether the Sheriff, who released the inmate to the Town of Iota (hereinafter "the Town") for its use on a crew, was grossly negligent, thus disqualifying his office from statutory indemnification from the Town.
After reviewing applicable jurisprudence, we conclude that the trial court erred in requiring plaintiff to recover from the inmate for a part of the victim's damages, and that the law and public policy require our absolving the Sheriff of any ultimate liability. Accordingly, we reverse in part and render.

FACTS
The facts are largely undisputed. Defendant, Denny Wayne Gibbs, was an inmate at the Acadia Parish Detention Center during October 1992, when the Center, under the jurisdiction of co-defendant Sheriff Kenneth Goss, assigned Gibbs to an inmate municipal work program in the Town of Iota at the Town's request. On October 19, 1992, Gibbs escaped from the work detail, stole a vehicle owned by the Town and within 15 minutes, while being chased by law enforcement officials, was involved in an accident with plaintiff, Keith W. Marceaux, in the City of Jennings. Gibbs' blood alcohol level at the time of his arrest was .17.
Plaintiff eventually sued Gibbs, the Town of Iota and its Chief of Police, and Sheriff Goss. At trial, Iota's then mayor testified that, pursuant to La.R.S. 15:708, by letter dated November 5, 1991, he requested that the Acadia Parish Sheriff release five prisoners to the Town of Iota for use on public projects. The letter stated that the Town *1191 would furnish security for the prisoners, seemingly consistent with the mayor previously having been advised of the necessity that the prisoners be directly supervised by a commissioned law enforcement officer.
To comply with the supervision requirements, the mayor hired Lee Malone, a commissioned police officer with prior law enforcement experience. At some point during the next year, the mayor and the director of Iota's public works department decided that on some occasions, more work could be obtained from the prisoners if they were split into two or more groups. Following this determination by the Town fathers, the Town deviated from its prior practice, with Malone retaining responsibility for one group of inmates and public works department employees lacking law enforcement background, responsible for supervising the other. The errant inmate, Gibbs, belonged to the latter category.
After they had mowed grass in the morning of the fateful day in question, Gibbs' public works supervisor, Joel Cart, brought the prisoners to City Hall during their lunch break. Between that time and 2:45 p.m., when Cart brought the prisoners to the "Town Barn" to return their equipment, Gibbs and another prisoner surreptitiously consumed a considerable amount of alcohol found in a cabinet in the volunteer firemen's "hut." It was then that Gibbs managed his escape. The record shows that shortly before 2:45 p.m., Cart intentionally left the keys in the city-owned vehicle because he initially intended to immediately return the prisoners to the Acadia Parish Detention Center from the barn before deciding to try to get another fifteen or so minutes of work out of the crew under his supervision. During this period, Cart's concentration on returning the prisoners receded in favor of conversation with a town alderman and the Town of Iota's public works superintendent, Isaac Cormier, but returned with a full measure of adrenalin a few minutes later, when a city employee informed Cart that Gibbs had just driven off in his vehicle.
Gibbs wasted no time in absenting himself from Cart's supervision, leaving the Town of Iota at 2:55 p.m. on Interstate 10, where he sideswiped several vehicles before exiting the interstate and entering the City of Jennings. In Jennings, Gibbs ran a red light and struck the car in which plaintiff was a guest passenger. By 3:10 p.m., approximately fifteen minutes after his escape, the tornado had completed its journey.
Following a trial on the merits, the trial court found the Sheriff and Town of Iota liable with Gibbs for the damages caused by Gibbs' behavior, allocating liability to the defendants as follows:

Defendant, Denny Wayne Gibbs 30%
Defendant, Town of Iota 65%
Defendant, Sheriff of Acadia Parish 5%

The trial court concluded that plaintiff, Keith W. Marceaux, had established the following losses attributable to the accident:

Pain and suffering, past, present and $100,000.00
 future, physical and mental
Past medical expenses $ 56,787.63
Loss of past wages $ 26,520.00

In addition, the trial court assessed defendants with costs and interest from date of judicial demand.
From this judgment, appeals are lodged by each of the parties except Gibbs. The Town of Iota argues that the trial court abused its discretion in assigning it a disproportionate amount of fault when compared to the gross negligence of Gibbs. Sheriff Goss argues that his office is entitled to indemnification from the Town of Iota as provided by La.R.S. 15:708 in the absence of his office's gross negligence in releasing his inmate to the Town of Iota, which he denies. Finally, in plaintiff's appeal, he argues that the trial court should not have used comparative fault to permit the runaway inmate's negligence to reduce his keeper's responsibility; additionally plaintiff maintains that he is entitled to additional damages.

WHO MUST RESPOND IN TORT FOR DAMAGES ATTRIBUTABLE TO INMATE?
Plaintiff argues that the trial court erred in using comparative fault principles to allow the inmate's custodians to escape responsibility for "the full measure" of his damages. Compelled by jurisprudence and the facts of this case, we agree and reverse the trial court's contrary conclusion.
*1192 As a general rule, negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent. Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La. 11/30/94) at 11, 650 So.2d 712, 719. Second, such tortfeasors "should not be allowed to benefit at the innocent plaintiff's expense by an allocation of fault to the intentional tortfeasor under comparative fault principles." Id. (Emphasis in original.)
Although these general rules do not apply in all circumstances, they do here:
Custodians of prisoners have a duty to manage the affairs of the prison so as not to create an unreasonable risk of harm to the public. This duty does not encompass all harm inflicted by escapees. Although prison authorities have a duty to prevent inmates from escaping, that duty is intended to protect persons from being harmed by escaping inmates while they are in the process of escaping. The duty is not intended to protect persons from harm inflicted by inmates who have already escaped and who subsequently commit tortious acts in the furtherance of their own pursuits. The state is not the insurer of the safety of its citizens. To recover against a custodian, a plaintiff must prove that the custodian was negligent in the management of the prison, that this negligence facilitated the escape, that the actions of the escapee caused the harm complained of, and that the risk of harm encountered by the particular plaintiff falls within the scope of the duty owed by the custodian. Wilson, 563 So.2d [1251] at 1253 [(La.App. 1st Cir.1990)] (citing Sanchez v. State, Department of Health & Human Resources, 506 So.2d 777 (La.App. 1st Cir.1987)); LeBlanc v. State, Through Dept. of Corrections, 393 So.2d 125 (La.App. 1st Cir.), writ denied, 394 So.2d 1235 (La.1980); and, Reid v. State, Department of Corrections, 376 So.2d 977 (La.App. 1st Cir.1979), writ denied, 380 So.2d 71 (La.1980). See also, Edwards v. State, 556 So.2d 644, 649 (La. App. 2d Cir.1990).
Wilson v. State Through Dept. of Public Safety & Corr., 576 So.2d 490, 493 (La.1991).
Because plaintiff's injuries were sustained while defendant Gibbs was still in the process of fleeing, we are compelled by the jurisprudence of this state's high court to overrule the trial court's assessment of fault on Gibbs' part. In this case, plaintiff was not at fault; therefore, the liability of the tortfeasor should be 100%, with the answerable custodian or custodians able to seek whatever remedies the law permits against Gibbs. See La.Civ.Code art. 1804 and Chief Justice Callegero's concurrence in denial of rehearing, Veazey, 650 So.2d 712.

SHERIFF'S APPEAL
Next, we turn to the question of whether the Acadia Parish Sheriff was wrongly denied indemnity from the Town of Iota. La. R.S. 15:708 provides in pertinent part that prisoners in the custody of a parish sheriff may voluntarily be loaned by the sheriff to perform manual labor for towns and cities, and that while "the prisoners shall always remain under the custody and control of the sheriffs," nonetheless:
No sheriff shall be liable for any loss sustained by any such prisoner, except for those caused by the gross negligence or intentional act of the sheriff or his deputies.
La.R.S. 15:708 A(3)(c).
While the foregoing language did not become effective until after the date of the accident in question, for practical purposes it essentially restated prior law, which we reproduce here:
The political subdivision ... shall indemnify and hold the sheriff, the state, and the state agency harmless for any injury caused by the inmate, unless the gross negligence or intentional act of the sheriff or the state or the state agency was a substantial factor in causing the injury.
This is the law which governs this dispute. The Sheriff maintains that the trial court applied the wrong definition of "gross negligence" in finding his office legally answerable. In the alternative, he maintains that the trial court erred in concluding that the security measures adopted by his office were a *1193 "substantial factor" contributing to Gibbs' escape.
On the basis of the record before us, we find favor in the Sheriff's first argument, which is dispositive, and pretermit the second. As noted by Sheriff Goss, the Louisiana Supreme Court shed light on the concept of gross negligence in Ambrose v. New Orleans Police Amb. Serv., 93-3099, 93-3110, 93-3112 (La. 7/5/94) at 5-6, 639 So.2d 216, 219-220:
Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942). Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." Hendry Corp. v. Aircraft Rescue Vessels, 113 F.Supp. 198 (E.D.La.1953) (applying Louisiana law). Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." W. Page Keeton, et. al., Prosser & Keeton on the Law of Torts, § 34, at 211 (5th ed. 1984); 65 C.J.S. Negligence, Sec. 8(4)(a), at 539-40 (1966 & Supp.1993). "There is often no clear distinction between such [willful, wanton, or reckless] conduct and `gross' negligence, and the two have tended to merge and take on the same meaning." Falkowski v. Maurus, 637 So.2d 522 (La.App. 1st Cir.), writ denied, 629 So.2d 1176 (La.1993) (quoting Prosser & Keeton, supra, at 214). Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.
The trial court concluded that the Sheriff was grossly negligent for two reasons, his alleged knowledge of pending charges against Gibbs in two other parishes and his failure to ensure that the municipality utilized a commissioned law enforcement officer to pick up trustees. In doing so, the trial court failed to define "gross negligence," the standard by which it arrived at its conclusion.
We conclude that neither ground articulated by the trial court furnishes an adequate basis for finding gross negligence on the part of the Sheriff in this case. Before the Sheriff consented to permit the Town of Iota to the use of Gibbs, the Town's Mayor consented to have the inmates picked up and supervised by a commissioned officer at all times. These conditions alone satisfied the Sheriff's obligations to his post. That other charges may have been leveled against Gibbs in other parishes does not warrant finding the Sheriff grossly negligent, as the background check performed by his office yielded no "hold" or "detainer" on Gibbs which would require his detention in the Sheriff's facility, particularly following the assurances of the Town of Iota that it would provide adequate supervision. Consequently, we conclude that the Sheriff was not grossly negligent, and therefore entitled to indemnification under La.R.S. 15:708.
Finally, we turn to the question of quantum. Plaintiff complains that the trial court's general damages award of $100,000.00 was abusively low and that the trial court erred in refusing to award him any damages for lost future wages, points disputed by the Town of Iota.
In support of his position with respect to his first error assigned, general damages, plaintiff maintains that our opinion in Hoback v. KMart Corp., 628 So.2d 1258 (La.App. 3 Cir.1993) is dispositive. In Hoback, the aggrieved was required to undergo a diskectomy and fusion at L5-S1, and we raised the thirty four year old's general damages award to $150,000.00; the jury had only awarded him $10,000.00.
Hoback notwithstanding, we can find no abuse of discretion on the trial court's part that would warrant upheaval of its quantum assessment, given the cold record before us in this case.
Our role as an appellate court in reviewing general damages is not to decide what we consider to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. "Each case is different, and the adequacy or inadequacy of *1194 the award should be determined by the facts or circumstances particular to the case under consideration." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Thus, before we may conclude that an award for injuries is excessive we are obliged to first take into consideration the particular effects of the particular injuries on these particular plaintiffs, Id., citing Reck v. Stevens, 373 So.2d 498 (La.1979); that is, rather than use as a scale the prior awards in cases with generically similar injuries to determine whether the trier of fact has abused its discretion, it is preferable that we determine whether the award for the injuries sustained by these particular plaintiffs constituted a clear abuse of the "much discretion" vested in the trier of fact. Youn, 623 So.2d 1257, citing Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such determination of an abuse of discretion is a resort to prior awards appropriate, and then only for the limited purpose of determining the highest or lowest point which is reasonably within the factfinder's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In making its quantum assessment, the trial court in this case concluded that plaintiff's lingering effects from this accident were limited to pains in plaintiff's heels which occur only when he stands two or more hours. Under the circumstances, we can simply detect no clear abuse of the trial court's discretion and therefore need not resort to a de novo review or to some imperfect comparison with other cases.
Nor can we find any abuse on the part of the factfinder in refusing to award lost future wages. While it may be true, as Mr. Marceaux suggests, that he has lost the ability to perform manual labor to the extent previously possible, plaintiff's own vocational expert indicated that Mr. Marceaux could acquire additional skills at his local trade school. Most importantly, the record shows that plaintiff has experience managing construction, and this ability has not been adversely affected. In light of these factors, we are not inclined to second-guess the determinations of the trial court, which upon review would not appear to have abused its much discretion in refusing to award lost future wages as a component of damages.

DECREE
In light of the foregoing, we affirm the damages awarded plaintiff, but reverse the trial court's application of comparative fault. We also reverse its finding of gross negligence on the part of the Acadia Parish Sheriff. Consequently, we hold that the Sheriff is entitled to indemnification from the Town of Iota in accordance with the law.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
DOUCET, C.J., concurs in part and dissents in part and assigns reasons.
AMY, J., dissents and would affirm the judgment of the trial court in all respects.
DOUCET, Chief Judge, concurring in part; dissenting in part.
I agree with the majority's finding that there is no basis for finding the Sheriff grossly negligent.
However, I respectfully dissent from the majority's ruling that Gibbs' custodian should be assessed with 100% of the fault for the accident. I do not believe that Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La. 11/30/94), 650 So.2d 712 is applicable here. In that case, the supreme court refused to reduce the fault of the custodian of a convict who committed an intentional tort, rape, by the percentage of fault allocable to the convict. I can find no authority for a finding that an automobile collision resulting from running a red light, even while intoxicated, is an intentional tort. Nor can I find any authority for expanding the finding of Veazey to cases other than those involving *1195 intentional torts. Therefore, I would affirm the trial court's allocation of fault.