434 So.2d 570 (1983)
Meriam JACOBY
v.
STATE of Louisiana, et al.
No. 82 CA 0814.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
Rehearing Denied August 23, 1983.
*571 Bernard S. Smith, Covington, for plaintiff, appellee.
William E. Decker, Mandeville, for intervenors Elma Y. Reppond, Dorothy Frosch Wren Byrd, Eva M. Frosch and Michael Frosch.
Thomas H. Matuschka, Baton Rouge, for defendant, appellant, State of La.
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
This is a suit for damages in tort by Meriam Frosch Jacoby against David H. Nealy and the State of Louisiana, through the Department of Health and Human Resources (State), alleging that the State was at fault by allowing Nealy to escape from the Southeast Louisiana Hospital (SELH) and by failing to recapture him and that Nealy subsequently attacked Jacoby at her mobile home with a knife and inflicted serious wounds. Jacoby died while this suit was pending. The petition was amended to allege that the attack by Nealy caused Jacoby's death and this proceeding was thus converted into wrongful death and survival actions. The children and grandchildren of Jacoby's two predeceased brothers and her three surviving brothers and sister were substituted as parties plaintiff.[1] Nealy did not file an answer and a preliminary judgment by default was entered against him.
The trial court ruled Nealy attacked and injured Jacoby, and SELH was negligent in failing to recapture Nealy and awarded damages on the survival action of $100,000. The trial court further ruled that the plaintiffs failed to show a causal connection between the attack by Nealy and Jacoby's death and dismissed the wrongful death action. Finally, the trial court ruled that, pursuant to La.C.C. art. 2315, only the brothers and the sister that survived Jacoby inherited the survival action and dismissed the claims by the eleven heirs of the two predeceased brothers.
*572 Nealy did not take an appeal and the judgment against him is now final. Four of the eleven heirs of the predeceased brothers took a devolutive appeal which was dismissed by this court in Jacoby v. State, 429 So.2d 209 (La.App. 1st Cir.1983). The State took a suspensive appeal alleging that the trial court committed error by finding as a fact that Nealy attacked Jacoby, by ruling that the State was negligent and by awarding excessive quantum on the survival action. The successful plaintiffs answered the appeal contending that the trial court erred by dismissing the wrongful death action, by awarding inadequate quantum on the survival action, by failing to find the State strictly liable and by allowing the State additional time beyond the trial date to submit testimony of witnesses by deposition.

FACTS
On April 6, 1978, David Nealy was arrested by the Slidell Police Department pursuant to a warrant for aggravated burglary, and he was incarcerated in the St. Tammany Parish Jail. Bond was fixed at $15,000 and Nealy was unable to post this bail.[2] On April 7, 1978, Nealy had a seizure in the St. Tammany Parish Jail, was taken to the Washington-St. Tammany Charity Hospital in Bogalusa, Louisiana, for examination and treatment and returned to jail. Again, on April 9, 1978, Nealy was taken to the Washington-St. Tammany Charity Hospital and was transferred from there to SELH in Mandeville, Louisiana, where he was admitted on a physician's emergency certificate. After an examination on that same day, Nealy was transferred from SELH to the Charity Hospital in New Orleans, Louisiana, for examination and treatment.
On April 11, 1978, Nealy was returned to SELH. He was examined and found to be suffering from "cogwheel rigidity", a side effect of massive doses of neuroleptic medications which he had been taking for previously diagnosed paranoid-schizophrenia. Nealy was kept at SELH for treatment for the physical side effects of the neuroleptic medication and for re-regulation of his psychotropic medication. Nealy was permitted to sign a voluntary commitment because he did not exhibit symptoms of his mental illness, which apparently was in remission.
To treat Nealy's condition of overmedication, the medical staff at SELH placed him in a "closed ward" and began re-regulating his medication. Nealy responded well to this treatment and his physical condition improved. He was removed from the "closed ward", placed in an "open ward" and granted a "buddy card" which gave him freedom to go upon the hospital grounds in the company of another patient. The hospital grounds were not fenced and the hospital only had three security guards. Nealy had a substantial history of prior commitments for mental illness involving hostile attitudes and threats of violence. Nealy also had an arrest record involving minor acts of violence (simple batteries) and assaultive behavior. Nealy had no prior record of elopement from medical authorities or escape from police authorities.
On April 22, 1978, Nealy eloped (escaped) from SELH while helping attendants move beds from one ward to another. The records of SELH indicate that his absence was discovered at 2:15 P.M., and the St. Tammany Parish Sheriff's Office was notified. Latroy Sharp, the Security Officer for SELH, testified that when it was determined that Nealy was missing, he commenced looking for him. Apparently, his initial attempts were unsuccessful. The records of SELH further indicate that at 3:40 P.M., three women, who were staying at a log cabin at the Fontainbleu State Park located across U.S. Highway 190 from SELH, reported that a patient came by their cabin. At approximately that same time, Douglas C. Beaujeaux, Park Ranger for the Fontainbleu State Park, also notified SELH that Nealy was observed in the park. Sharp and Timothy Smith, an employee *573 of SELH, went to the eastern entrance of the park and observed a person on the railroad tracks approximately one-half mile away inside the park. Sharp and Smith attempted to approach this person several times and, on each occasion, the individual left the tracks and disappeared into the adjoining woods. Sharp and Smith then proceeded to the main or western entrance of the park where they met Beaujeaux and Kenneth Carrier, who was then Park Manager. The four men observed the person on the railroad tracks approximately one-half mile away from the western entrance. Beaujeaux subsequently identified the individual as Nealy.
At approximately 3:50 or 3:55 P.M., Sharp advised Carrier and Beaujeaux that his shift was over and that Smith was needed at the hospital for a ward count. Sharp advised that he would go back to the hospital and send over the next shift to assist in the recapture of Nealy. Approximately five to ten minutes later, a female attendant from the hospital arrived in the park where Beaujeaux was. (Carrier left for a short time and returned after the female attendant arrived.) When she arrived, Nealy disappeared into the woods and was not seen again. The female attendant made no effort to search for Nealy and advised Beaujeaux and Carrier that she had checked his record and that he was confused. She further indicated that there was nothing more to do and she left. After she left, Beaujeaux and Carrier discontinued the search for Nealy and also left the scene.
Nealy left the Fontainbleu State Park and proceeded to the Ozone Motel and Trailer Park in the Town of Mandeville, Parish of St. Tammany, Louisiana. He went to the mobile home of Meriam Jacoby, stabbed her several times, took her car keys and some of her money and drove off in her car. There is no evidence to show that he obtained the knife at SELH. Nealy was recaptured by the Slidell Police Department on April 25, 1978, and returned to the custody of the Sheriff of St. Tammany Parish. He was charged with attempted first degree murder, armed robbery, auto theft and simple escape.

LIABILITY OF THE STATE
The threshold issue in determining the liability of the State (through the Department of Health and Human Resources and SELH) for damages is whether or not the State owed a duty to the public that included within the ambit of its protection the risk that a patient might escape and cause injury to another. It is essential in making this judgment to understand the legal relationships between the Sheriff of St. Tammany Parish, SELH and Nealy.
Nealy was initially taken into custody by the Slidell Police Department pursuant to a warrant for his arrest for aggravated burglary. La.C.Cr.P. art. 202-205. An arrest is the taking of one person into custody by another. La.C.Cr.P. art. 201. Nealy's custody was transferred from the Slidell Police Department to the Sheriff of St. Tammany Parish when he was transferred to the St. Tammany Parish Jail. La.R.S. 15:704. Nealy's bail was fixed at $15,000 and the sheriff was not authorized to release him from custody prior to action on the charge by the district attorney or the court unless he posted bail pursuant to La.C.Cr.P. art. 311, et seq.
Under Louisiana law, confining authorities, such as the sheriff in charge of a parish jail, have a legal obligation to provide medical treatment for prisoners. If these medical services are not available on the premises, it is the duty of the confining authority to transfer a sick prisoner to a medical facility for appropriate treatment. La.R.S. 15:760-761; State v. Brouillette, 163 La. 46, 111 So. 491 (1927); State ex rel. Brown v. Bailes, 247 So.2d 625 (La.App. 2nd Cir.1971). The standard of care imposed upon the confining authority in providing for the medical needs of inmates is that those services be adequate and reasonable. See Brown v. State, 392 So.2d 113 (La.App. 1st Cir.1980).[3] If the confining authority *574 fails to provide reasonable medical services and treatment, an inmate has a civil rights action pursuant to 42 U.S.C.A. 1983 to secure such care. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).
When the sheriff transported Nealy to SELH for treatment, he was performing a duty imposed upon him by the laws of the United States and the State of Louisiana. The medical evidence indicates that a psychiatric hospital, like SELH, is the appropriate place for the treatment of a patient who is suffering from the side effects of neuroleptic medications (like Nealy), because psychiatrists are best able to regulate such medications and treat their side effects. It was then and is now the public policy of Louisiana expressed by the Legislature in La.R.S. 28:50(4)[4] that mental health services be delivered as near to the place of residence of the person receiving such services as reasonably possible and medically appropriate. SELH has been designated by law as an institution for the treatment of the mentally ill. La.R.S. 28:21; La.R.S. 28:2(28). As a designated treatment facility for the mentally ill, SELH was authorized by law to receive for observation, diagnosis, care and treatment, any person whose admission was authorized under any of the procedures provided for in La.R.S. 28:52 through La.R.S. 28:54. La. R.S. 28:51. Nealy was initially admitted to SELH pursuant to an emergency certificate as authorized by La.R.S. 28:53. He was subsequently readmitted under a formal voluntary admission as authorized by La. R.S. 28:52.2.
The emergency commitment for treatment and the voluntary commitment for treatment did not transfer the legal custody from the sheriff to SELH. Legal custody of a prisoner can only be transferred by some type of court action. See, for example, La.C.Cr.P. art. 650, et seq. (criminal defendant found not guilty by reason of insanity); La.C.Cr.P. art. 641, et seq. (criminal defendant lacks mental capacity to proceed); La.R.S. 28:59 (convicted prisoner becomes mentally ill while incarcerated). Although Nealy was temporarily assigned to SELH for treatment of his physical problems brought on by overmedication and was under the supervision of the medical staff of the hospital, he was still in the lawful custody of the sheriff. This situation is analogous to the case of State v. Verrett, 347 So.2d 230 (La.1977) where a prisoner was assigned to work each day in a nearby state park under the supervision of the park's superintendent. The prisoner left the park without permission and returned to his home. He was charged with and convicted of simple escape, in violation of La.R.S. 14:110. The Louisiana Supreme Court ruled that, although the prisoner was authorized to work in the park under the supervision of the park superintendent, he was still in the lawful custody of an officer of the Department of Corrections and affirmed the conviction. By analogy, if a prisoner escapes from a hospital where he has been taken temporarily for treatment, as a matter of law, he still escapes from the custody of a law enforcement officer and is guilty of simple escape as that term is defined in La.R.S. 14:110. See State v. Perry, 364 So.2d 900 (La.1978).
The leading case concerning what risks are included in the duty owed by a confining authority when a prisoner (patient) illegally obtains his freedom is Frank v. Pitre, 353 So.2d 1293 (La.1977). The prisoner, recently returned on parole from Angola on a sentence for burglary, was arrested for another burglary and was jailed on that charge and as a parole violator. The prisoner was subsequently allowed to leave jail by the sheriff's office on a "pass". The prisoner went to a barroom and became involved in a disturbance in which he was killed and the plaintiff was shot. Both the trial court and the court of appeal rendered judgment in favor of the plaintiff and *575 against the sheriff. The Louisiana Supreme Court reversed. The court observed that the purpose for incarceration after arrest for a crime was to assure the presence of the accused for trial. The court then quoted with approval from Green v. State, Department of Institutions, 91 So.2d 153, 155 (La.App. 1st Cir.1956), as follows:
"An institution's duty to restrain a convicted criminal is not based upon the purpose of protecting the general public from all harms that the prisoner might inflict if he were allowed to escape. A convicted person may be as dangerous on the day of his legal release as he was on the first day that he was confined, although the institution may still be under a legal duty to detain or to release him. There is no more reason for the State to be civilly responsible for the convict's general misconduct during the period of his escape than for the same misconduct after a legal release, unless there is some further causal relationship than the release or escape to the injuries received...."
The court then concluded that the duty of the sheriff to hold a prisoner in pretrial custody did not encompass the risk that he would be illegally released and cause injury to another. In a concurring opinion, Justice Tate observed as follows:
Assuming that the defendant sheriff violated some legal duty by affording the prisoner a weekend pass, this violation was not the proximate or "legal" cause of the plaintiff's injuries. For a defendant's violation of a duty to be a legal cause of an injury, his violation must not only be a cause in fact of (i.e., a substantial factor contributing to) the injury, but the duty violated must also have included within its purpose the prevention of the risk encountered by the plaintiff to his injury. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Robertson, Reason v. Rule in Louisiana Tort Law, 34 La.L.Rev. 1 (1973).

Here, as the majority correctly notes, the sheriff's duty to confine the person held for bailable charges plainly did not include within its scope the protection of third persons from injury should the prisoner be released, with or without bail. I would prefer to rest our conclusions solely upon this analysis of proximate ("legal") cause, rather than also upon the additional use of pre-Dixie principles enunciated by the majority.
(Emphasis added).

Frank, 353 So.2d at 1296.
This court has followed Frank v. Pitre in cases involving prisoners who have escaped from jails. In Reid v. State, Dept. of Corrections, 376 So.2d 977 (La.App. 1st Cir. 1979), writ denied 380 So.2d 71 (La.1980), the prisoner escaped from Jackson Barracks in New Orleans and, eleven days later, killed the husband and father of the plaintiffs during an armed robbery. This court assumed arguendo that the State was negligent in failing to recognize the dangerous propensities of the prisoner and by negligently allowing him to escape. This court held that the duty of the State to confine the prisoner, who had been convicted of a crime, did not protect against the injuries incurred under the facts and circumstances of that case. In LeBlanc v. State, Through Department of Corrections, 393 So.2d 125 (La.App. 1st Cir.1980), writ denied 394 So.2d 1235 (La.1980), a juvenile was adjudicated a delinquent and incarcerated in the Louisiana Training Institute. When he had acquired sufficient merit points, he was assigned to a rehabilitation facility. While at the rehabilitation facility, he robbed, brutally beat and raped a female on the premises. This court observed that, while the State has a duty to prevent inmates of penal institutions from escaping, this duty is intended only to protect persons from being harmed while the inmate is in the process of escaping. The duty is not intended to protect persons from being harmed by inmates who have already escaped. Even if it were assumed arguendo that the juvenile had escaped, his escape was completed when he left the grounds of the Louisiana Training Institute. The State is not the insurer of the safety of its citizens.
*576 The only Louisiana case found where recovery was allowed for injuries caused by a prisoner who had escaped is Webb v. State Department of Institutions, 91 So.2d 156 (La.App. 1st Cir.1956). In Webb, a prisoner escaped from Angola and shot the plaintiff in her home with a revolver he had stolen from an Angola employee. This court allowed recovery because the State had not erected adequate fences to prevent the convicted, dangerous criminals in Angola from escaping, no warning was given to the public that an escape had occurred, the State failed to promptly get its recapture machinery in action, the State negligently allowed the prisoner to remain unsupervised and the State negligently allowed the dangerous, convicted prisoner to obtain the pistol and drugs. This case demonstrates that there is a significant difference between pretrial detention and post-conviction confinement. As indicated in Frank v. Pitre, the purpose of pretrial detention is to assure the presence of the defendant at court appearances. The purposes of post-conviction incarceration are to punish the defendant, to effect rehabilitation, to protect the public from the dangerous propensities of the individual and/or to serve as an example to deter others from similar criminal behavior.
The purposes served by jails and penitentiaries, which provide pretrial and post-conviction incarceration, are substantially different than the purpose of a treatment facility such as SELH. By law, a treatment facility does not include a jail or prison of any kind or any facility under the supervision of the Department of Corrections. La.R.S. 28:2(28). The purpose of a mental treatment facility is to engage in an active effort to accomplish an improvement in the mental condition or behavior of a patient or to prevent deterioration in his condition or behavior. La.R.S. 28:2(27); 40:2102(A).
Although the Louisiana Mental Health Law recognizes that persons charged with or convicted of crimes may need treatment for their mental conditions and may require special protection and restraint (La.R.S. 28:25), the Legislature of Louisiana has declared in La.R.S. 28:50(2) that the public policy in treating a patient in a mental hospital shall be, in part, as follows:
That any involuntary treatment or evaluation be accomplished in a setting which is medically appropriate, most likely to facilitate proper care and treatment that will return the patient to the community as soon as possible, and is the least restrictive of the patient's liberty;
The Legislature of Louisiana has also provided that, when a mental treatment facility treats a patient, it must observe the following guidelines provided in La.R.S. 28:171(D), (E) and (J), as follows:
D. Restraint may be used only as a therapeutic measure or to prevent a patient from causing physical or mental harm to himself or others. In no event shall restraint be utilized solely to punish or discipline a patient, nor is restraint to be used as a convenience for the staff of the treatment facility. A person placed in restraints shall have his status reviewed periodically.
E. Seclusion may be used only as a therapeutic measure or to prevent a patient from causing physical or mental harm to himself or others. In no event shall seclusion be utilized solely to punish or discipline a patient, nor is seclusion to be used as a convenience for the staff of the treatment facility. A person placed in seclusion shall have his status reviewed periodically.
J. Every patient shall have the right to be discharged from a treatment facility when his condition has changed or improved to the extent that confinement and treatment at the treatment facility are no longer required. The director of the treatment facility shall have the authority to discharge a patient admitted by judicial commitment without the approval of the court which committed him to the treatment facility. The court shall be advised of any such discharge. The director shall not be legally responsible to any person for the subsequent acts or behavior of a patient discharged by him in good faith.
*577 In Graham v. State, Health and Social Rehabilitation Services Administration, 354 So.2d 602 (La.App. 1st Cir. 1977), a patient from a State mental facility in Pineville, Louisiana, escaped. Several hours later in a city a hundred miles away, he attacked a twelve year old boy with a knife and inflicted severe injuries. The patient had a past history of escapes, he frequently threatened violence and exhibited symptoms of several forms of schizophrenia. About two days prior to the escape, the patient attacked hospital attendants and fellow inmates with a chair. He was placed in leather arm bindings and leg irons attached by leather thongs. He was placed in the hospital's maximum security area, an unbarred room with windows enclosed by shutters. The hospital had no barred rooms or cells. The patient apparently obtained a razor blade and freed himself of his restraints and fled the hospital. The record does not reflect where the patient obtained the knife. Using the duty/risk analysis, this court determined that the State's duty to protect the public from harm at the hands of escaped inmates of public institutions did not include within the ambit of its protection the injuries sustained and denied recovery to the plaintiffs.
The law is clear that, if a person lawfully arrested for a crime escapes, the person from whose custody he escaped may pursue and retake him immediately without a warrant at anytime and in any place within the State. La.C.Cr.P. art. 227. It is unclear in the law and from the record what authority, if any, the security officers of SELH had to pursue and capture Nealy when he escaped from the hospital grounds.[5] Nealy's legal custody was still in the sheriff while he was temporarily under the supervision of the hospital staff for medical treatment.
In making the duty/risk analysis in the instant case, we consider the following factors pertinent:
(1) The principal purpose of pretrial confinement is to insure the presence of the defendant for court appearances and such confinement is not intended to have the purposes of post-conviction incarceration;
(2) The principal purpose of SELH is to provide appropriate medical treatment for mental illness and, thus, is different from that of a prison;
(3) It is the statutory public policy of this State that persons with mental illness be treated in an environment that is the least restrictive of their liberties as reasonably possible;
(4) At all times pertinent to these proceedings, the legal custody of Nealy was in the Sheriff of St. Tammany Parish and he was only under the supervision of the medical staff of SELH for treatment of a transitory physical problem that resulted from overmedication given for his mental condition; and
(5) The sheriff had the primary responsibility for Nealy's recapture.
After considering all the facts and circumstances in this case and the factors above set forth, we conclude that the duty of SELH to receive, treat and secure a patient does not include within the ambit of its protection the risk that the patient would escape and injure a third person by his own independent action.[6] Accordingly, the plaintiffs have no legal right to prevail against the State. That portion of the trial court's judgment finding the State liable for damages is reversed.

STRICT LIABILITY OF THE STATE
The plaintiffs-appellees contend that the trial court committed error by not determining the State strictly liable pursuant to La.C.C. art. 2317 because Nealy was a person for whom SELH was answerable.
*578 Because we have determined that the lawful custody of Nealy remained in the Sheriff of St. Tammany Parish, SELH was not legally responsible for him pursuant to La.C.C. art. 2317. Further, this court has rejected the application of strict liability in cases of this type. See Reid, 376 So.2d at 979. Finally, even if strict liability were applicable, the plaintiff is only relieved of the obligation of showing that the defendant knew or should have known of the unreasonable risk. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982). The evidence in the instant case shows that SELH was aware of Nealy's prior record of commitments and arrests and was aware of the fact that he escaped. The duty/risk analysis in strict liability and negligent liability cases is essentially the same. Entrevia v. Hood, 427 So.2d 1146 (La. 1983).

ALLOWING POST-TRIAL DEPOSITIONS
The plaintiffs-appellees contended that the trial court committed error by allowing post-trial depositions of witnesses. This alleged error was neither briefed nor argued. Specifications of error which are not briefed or argued are considered abandoned. R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980); Moossy v. Huckabay Hospital, Inc., 283 So.2d 699 (La.1973).

MOOT ISSUES
Because we have found that the plaintiffs have no legal right to prevail against the State, the issues of the dismissal of the wrongful death action and inadequate quantum on the survival action are now moot with reference to the State. These issues cannot be raised with reference to Nealy. Nealy and the plaintiffs are not appellants. The plaintiffs' answer to the appeal by the State does not have the effect of an appeal to any portion of the judgment affecting a party not an appellant like Nealy. La.C.C.P. art. 2133; Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976); Wheat v. Ford, Bacon and Davis Construction Corp., 414 So.2d 823 (La.App. 1st Cir.1982); Shaw v. Travelers Insurance Company, 293 So.2d 568 (La.App. 3rd Cir.1974), writ denied 295 So.2d 815 (La.1974).

CONCLUSION
For the foregoing reasons, the judgment in favor of the plaintiffs-appellees against the State is reversed. The plaintiffs-appellees are cast for all costs of this appeal.
REVERSED.
NOTES
[1] Jacoby's parents and spouse predeceased her and she had no children.
[2] The testimony of Wallace Laird, Chief Deputy Sheriff of St. Tammany Parish, indicated that the aggravated burglary charge was dropped by the District Attorney's Office at some later date.
[3] The cost of these medical services in the parish jail is the responsibility of the parish governing authority. Amiss v. Dumas, 411 So.2d 1137 (La.App. 1st Cir. 1982), writ denied 415 So.2d 940 (La.1982).
[4] All references to the Louisiana Mental Health Law (La.R.S. 28:1, et seq.) in this opinion show that law as it was amended through Act 714 of 1977.
[5] See, for example, La.R.S. 28:102 and 561. The power of arrest granted under the Louisiana Mental Retardation Law can only be exercised on the hospital grounds. La.R.S. 28:444.
[6] We have utilized the duty/risk analysis methods suggested in Entrevia v. Hood, 427 So.2d 1146 (La. 1983) and Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) in making our analysis in the instant case.