476 So.2d 881 (1985)
Dennis BROWN et al., Plaintiffs-Appellants,
v.
The AMERICAN DRUGGISTS' INSURANCE COMPANY et al., Defendants-Appellees.
No. 17189-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1985.
Rehearings Denied October 24, 1985.
Writs Denied December 13, 1985.
Campbell, Campbell & Johnson by John T. Campbell, Minden, for plaintiffs-appellants, Dennis Brown, Gary L. Brown and Linda Brown Tate.
Cook, Yancey, King & Galloway by Edwin L. Blewer, Jr. and John D. Collinsworth, Shreveport, for defendants-appellees, The American Druggists Ins. Co., Sheriff Royce McMahen, Ivory Hawkins and Richard Duty.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Wingo and Glass, escapees from the Webster Parish jail through the negligence of deputy sheriffs, were responsible for the murders of Newt Brown and his wife, Erlene Brown, committed several hours after the escapees left the jail and a few miles from the place of incarceration. The three children of the Browns, all majors, filed suit for damages against Wingo, Glass, the sheriff and his liability insurance carrier, and the two deputies involved.
In written reasons for judgment the trial judge found liability on the part of the two escapees, but absolved the other defendants of liability primarily on the theory that, though the deputies were negligent, the particular harm inflicted could not have been reasonably anticipated.
Plaintiffs appealed that portion of the judgment rejecting their claims and also asked for an increase in the $300,000 general damage award.
For the reasons explained, we reverse that portion of the judgment rejecting plaintiffs' claims against the sheriff, his liability insurance carrier and the two deputies, and render judgment accordingly.
The facts of the case are undisputed. On Christmas Eve, 1982, Wingo and Glass were confined in the Webster Parish jail. Wingo was awaiting trial on burglary *882 charges. Glass had been sentenced to ten years imprisonment for armed robbery and his case was on appeal. The two deputies in charge of the jail at that time, Hawkins and Duty, were allowing prisoners out of their cells to make telephone calls. While Wingo and Glass were in the area to put through their calls a disturbance occurred in the rear of the jail. With the deputies thus distracted, Wingo and Glass stepped into the elevator, went to the ground floor and left the premises.
The two escapees walked about four miles to the home of Newt Brown and Erlene Brown, who were absent from their dwelling. After trying unsuccessfully to start a pickup truck parked in the yard, Wingo and Glass were on the verge of breaking into the house when they observed the approach of the Browns returning home. The two escapees retreated to a storage shed where they appropriated clothing, tools and alcoholic beverages. Consuming the alcohol in nearby woods while keeping watch, Wingo and Glass waited about an hour until the Browns retired for the night. Seeing the lights in the house extinguished, the two escapees broke into the dwelling, surprised the Browns, and bound and gagged them. Glass then shot the husband and wife with a pistol found in the bedroom.
Wingo and Glass took cash, weapons and the keys to the Browns' automobile and fled. The two split up shortly thereafter. Wingo was captured near Atlanta, Texas on January 5, 1983 and Glass was apprehended in San Diego, California two days later. Both were tried, convicted and sentenced to death for the murders of the Browns.
In Reid v. Louisiana, through the Department of Corrections, 376 So.2d 977, 978 (La.App. 1st Cir.1979) the court stated:
"Custodians of prisoners have a duty to manage the affairs of the prison so as not to create an undue risk of harm to the public. To recover, plaintiff must prove that the custodian was negligent in his management of the prison; that his negligent breach of duty facilitated the escape of the prisoner; that the actions of the escapee caused the harm complained of; and that the risk encountered falls within the scope of the duty owed."
Though negligence was found on the part of the custodian in most Louisiana "escape" cases, recovery was denied because injuries to third parties were not deemed to be within the scope of the duty breached. See (1) escape from mental institutionsJacoby v. Louisiana, 434 So.2d 570 (La.App. 1st Cir.1983); Graham v. Louisiana, 354 So.2d 602 (La.App. 1st Cir. 1977), (2) negligent release from confinement facilitiesFrank v. Pitre, 353 So.2d 1293 (La.1978); Lloyd v. Louisiana, 395 So.2d 1385 (La.App. 1st Cir.1981); LeBlanc v. Louisiana, 393 So.2d 125 (La.App. 1st Cir.1980), (3) actual escape from confinement facilities due to the negligence of authoritiesReid v. Louisiana, supra; Green v. Louisiana, 91 So.2d 153 (La.App. 1st Cir.1956).
On the other hand, we find pertinent the case of Webb v. Louisiana, 91 So.2d 156 (La.App. 1st Cir.1956). There, Mrs. Webb was shot and seriously injured by a prisoner who was allowed to escape from Angola State Prison. Affirming recovery for the plaintiff, the appellate court found that the escapee was a dangerous criminal and the authorities were negligent in the following respects: failing to have adequate fencing or supervision at the prison; leaving liquor, drugs and weapons where the prisoner could easily obtain them; and failing to quickly initiate recapture operations after the escape was discovered. The court then found sufficient causal connection between the negligence of the custodian and the injury to Mrs. Webb to impose liability upon the former.
In this case there is no question but that the negligence of the sheriff's deputies led to the escape of Wingo and Glass. There was, therefore, a breach of the sheriff's duty to the public. Was the murder of the Browns within the scope of that duty? Rather than engaging in the futile task of attempting to predict the unpredictable whether one individual may kill another *883 onewe direct our inquiry to an analysis of the events to determine whether the murders were an integral part of the escape. Our answer is in the affirmative.
In order to have any hope of completing their escape, it was essential that Wingo and Glass procure transportation and cash. It was in connection with acquiring these essentials that Glass murdered the Browns, only a few hours following departure from the jail and only a few miles from the place of incarceration. Under those circumstances, we conclude that the negligence of the deputies (imputable to their employer, the sheriff) led to the escape and then to the murder of the Browns. In other words, protection of the Browns from the consequences of the escape was within the duty owed by the sheriff.
For these reasons, we find that the trial judge committed error as a matter of law in absolving the sheriff, his liability insurance carrier and two deputies of liability.
As to quantum, we find no abuse of the trial judge's discretion in fixing the amount of general damages at $100,000 for each of the three plaintiffs.
We, accordingly, reverse that portion of the judgment rejecting plaintiffs' claims against the sheriff his liability insurance carrier and two deputies, and amend the judgment by recasting the pertinent portion to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs, Dennis Brown, Linda Brown Tate and Gary L. Brown, and against Jimmy Wingo, Jimmy Glass, Sheriff Royce McMahen, Deputy Sheriff Ivory Hawkins, Deputy Sheriff Richard Duty and The American Druggists' Insurance Company, in solido, in the full sum of $317,851.09, together with legal interest thereon from judicial demand until paid and for all costs of these proceedings."
Appellees are assessed with costs of appeal.