699 So.2d 1065 (1997)
Keith W. MARCEAUX, et ux.
v.
Denny Wayne GIBBS, et al.
No. 96-C-2839.
Supreme Court of Louisiana.
September 9, 1997.
Opinion Granting Rehearing in Part October 10, 1997.
*1066 Thomas K. Regan, Privat & Regan, Crowley, for Applicant.
Andre Doguet, Cline, Miller, Richard & Doguet, Rayne; Milo Addison Nickel, Jr., Woodley, Williams, Fenet, Boudreaux, Norman & Brown, Lake Charles; Homer Ed Barousse, Jr., Crowley, for Respondent.
JOHNSON, Justice.[*]
We granted certiorari in this personal injury suit to determine whether the court of appeal properly reversed portions of the trial court's judgment. The appellate court reversed the trial court's assessment of liability placed on the defendants because it determined that there was no finding of "gross negligence". Additionally, the appellate court determined that the trial court erred in requiring plaintiff to recover a portion of his *1067 damages from the negligent inmate. For the reasons stated herein, we reinstate the trial court's ruling which holds the negligent parties jointly liable to plaintiff, but reassign the apportionment of fault. We affirm the holding of the appellate court that the Acadia Parish Sheriff's Office is relieved of any liability.

FACTS AND PROCEDURAL HISTORY
Denny Wayne Gibbs, an inmate serving a five year sentence with the Louisiana Department of Corrections was incarcerated at the Acadia Parish Detention Center from May 14, 1992 until November 19, 1992. Because he was considered a "model" prisoner, he was deemed eligible to become a trustee. At the request of Jarred A. Frey, Mayor of the Town of Iota, the Acadia Parish Sheriff assigned Gibbs to an inmate municipal work program where he worked for the Town of Iota. As a model prisoner, Gibbs allegedly posed no security risk.
However, all parties who considered Gibbs trustworthy were proven wrong. On October 19, 1992, while working for the Town of Iota, he temporarily re-gained his freedom when he decided to drive off in a town vehicle. While being pursued by law enforcement officials, Gibbs drove through the city of Jennings and struck a vehicle in which plaintiff, Keith W. Marceaux was a guest passenger. Gibbs was then taken back into custody and a sobriety test revealed that his blood alcohol level was 0.17.
On October 13, 1993, plaintiffs filed their petition for damages naming Gibbs, the Town of Iota, Robert Walker as Police Chief for the Town of Iota[1], Kenneth Goss as sheriff of Acadia Parish and Illinois National Insurance Company as the uninsured and/or underinsured provider for plaintiff. Evidence introduced at trial showed that Mayor Frey requested in writing that Sheriff Goss release five prisoners for use as a crew on a public works project. The Town of Iota's liability is established under La. R.S. 15:708. In pertinent part the statute provides:
"Whenever a prisoner sentenced to a parish prison of any parish of the state, by any court of competent jurisdiction, or a prisoner in a parish prison awaiting transfer to a state correctional facility shall be willing of his own will to perform manual labor by assisting the governing authority of any municipality to maintain the municipality in a safe and sanitary condition by cutting, destroying, or removing noxious weeds or grass or other deleterious, unhealthy, or noxious growths on any sidewalks banquettes and on any lot, place, or area within the municipality and the sheriff has approved the work, the sheriff may set the prisoner to work upon labor determined by the governing authority of the municipality to effectuate this purpose..."
See La. R.S. 708A(3)(a).
The letter dated November 5, 1991 clearly stated that the town would furnish security. This statute further provides that the sheriff shall establish written rules for the administration of the workday release program[2]. Mayor Frey testified that the sheriff informed him of the requirement that the prisoners be directly supervised by commissioned law enforcement officers. The mayor hired Lee Malone, a commissioned officer for that purpose.
In December, 1991, the mayor received a request from Chief Robert Walker to allow the city police to supervise the trustees. Chief Walker's request was denied. At the direction of the mayor, the trustees were placed under the department of public works which was headed by Isaac Cormier who was Mr. Malone's immediate supervisor.
In an effort to expand the workload being performed by the trustees, Mayor Frey and Mr. Cormier decided to split the trustees into two or even three groups. Under this revised plan, Lee Malone supervised one group while the other groups were supervised by various employees of the public works department. Besides Mr. Malone, no other party supervising the trustees was a commissioned police officer.
*1068 When he made his escape, Gibbs was being supervised by Joel Cart, an employee with the department of public works. Cart testified that he was never trained in supervision of prisoners and would often allow them to be as far as two blocks away, but that he almost always kept them in sight. He further testified that he had picked up the prisoners ten to twelve times and was never questioned by any employee at the Acadia Parish Detention Center.
Cart further testified that he had the prisoners cutting grass on the morning of the incident, and brought them to City Hall during their lunch break. At approximately 2:45 p.m., the prisoners were brought to the Town barn to return their equipment. Cart stated he left the keys in the ignition of the work vehicle because he expected to return the prisoners immediately to the Acadia Parish Detention Center. Thinking he could get an additional fifteen minutes of work out of his crew, he ordered the trustees to do some odd jobs which were performed out of his line of vision. During this interval, Cart engaged in conversation with Cormier and a town councilman. Minutes later, a city employee informed Cart that Gibbs had just driven off in his vehicle. Gibbs entered Interstate 10, sideswiped several vehicles and exited the highway as he entered Jennings, Louisiana. Gibbs' freedom lasted approximately fifteen minutes, because at 3:10 p.m. he ran a red light and struck the vehicle in which plaintiff was a guest passenger.
The record shows that Gibbs waived his right to appear at trial, and in lieu thereof, his deposition taken on May 4, 1995 was submitted into evidence. Gibbs testified that while Cart was not supervising him, he and another prisoner entered the volunteer fireman hut where they consumed several bottles of alcohol.
In a July 11, 1995 judgment, the trial court held Gibbs, Sheriff Goss and the Town of Iota responsible for plaintiff's injuries. Liability was allocated as follows: Gibbs at 30%; Sheriff Goss at 5%; and Town of Iota 65%. Plaintiff was awarded damages in the amount of $183,307.63 as follows:

Physical and mental pain and suffering
(past, present and future) $100,000.00
suffering (past, present and future)
Past medical expenses $ 56,787.63
Loss of past wages $ 26,520.00[3]

DISCUSSION
On appeal, the Third Circuit affirmed the award for damages, but reversed the trial court's allocation of comparative fault along with the finding of gross negligence on the part of Sheriff Goss. Marceaux v. Gibbs, 680 So.2d 1189 (La.App. 3 Cir.1996). In reversing the trial court's determination of comparative fault, the appellate court found that plaintiff's injuries were sustained while Gibbs was still in the process of fleeing, and that plaintiff was not at fault. The court reasoned that the liability of the "tortfeasor" should be 100% and that the answerable custodian(s) should seek whatever legal remedies they have against Gibbs.
As authority the appellate court cited Ambrose v. New Orleans Police Dept. Amb. Serv., 639 So.2d 216 (La.1994), when they reversed the trial court's assessment of liability on the part of Sheriff Goss. They opined that the trial court held Sheriff Goss liable for two reasons: (a) his knowledge of pending charges against Gibbs in two other parishes; and (b) his failure to insure that the Town of Iota utilized commissioned law enforcement personnel to pick up the trustees. The Third Circuit then concluded that the trial judge failed to define "gross negligence" and that under the facts of this case there was no gross negligence as required by Ambrose to hold the sheriff liable.
Finding that Mayor Frey agreed to have the inmates picked up and supervised by commissioned officers at all times, the appellate court concluded that the sheriff fulfilled any obligation incurred on his part. Also, it concluded that the sheriff's office was not required to detain Gibbs at the Acadia Parish Detention Center because the background check did not reveal a need to hold or detain him. Additionally, the appellate court held *1069 that Sheriff Goss was entitled to indemnification as per La. R.S. 15:708.
We granted this application because of the significance of two important issues. We will first discuss the question of whether the custodians of an inmate can be held liable for acts of ordinary negligence committed by an inmate during escape. Stated another way, does the public duty doctrine extend responsibility to custodians for acts involving ordinary negligence committed by an escapee during his escape. The other issue of concern involves whether the rule established in Veazey v. Elmwood Plantation Associates, Ltd., 650 So.2d 712 (La.1994) that allows comparison of fault between intentional tortfeasors and negligent tortfeasor is applicable.

custodial liability
Wilson v. Department of Public Safety & Corrections, 576 So.2d 490 (La.1991) allowed this court the first opportunity to set forth the test which should be applied when the victim of a crime committed by an escapee sues prison authorities for damages inflicted by the escaped prisoner. Wilson states that custodians of prisoners have a duty to manage the activities of their respective prisons in a manner such that the public is not exposed to an unreasonable risk of harm. The state is not the insurer of the safety of its citizens, therefore, this duty does not encompass all harm inflicted by an escapee. However, the operative intent of this duty is to protect the public from being harmed by escaping prisoners while in the process of their escape. In order to recover for injuries caused by an escaped prisoner, an injured plaintiff must prove the following:
(1) negligence on the part of the custodian in managing the facility;
(2) that this negligence facilitated the escape;
(3) that the escapee's actions caused the harm complained of; and,
(4) that the risk of harm encountered by the plaintiff falls within the scope of duty owed by the custodian.
Id. at 493.
In Wilson, Robert Downs was serving an eighteen-year sentence for armed robbery, when he along with two other inmates escaped from the Angola State Penitentiary on August 23, 1986. The escape was made possible by removing a cinder block located in one of the walls at the prison, and cutting through a fence located directly beneath an unmanned watch tower. Their escape was discovered within one hour and the authorities began a search which included parts of the state of Mississippi.
Nearly two weeks after the escape, plaintiffs Alvin Wilson and Ed Hilliard were confronted by Downs on September 5, 1986 while returning home. Plaintiffs were held at gunpoint and Wilson was ordered to relinquish the keys to his truck. They were then brought inside of their trailer and tied up with hangers while Downs took money, food and the vehicle.
Plaintiffs filed their action against the state contending that because of its negligence, they suffered personal injuries. The trial court rendered judgment in favor of the plaintiffs and awarded both plaintiffs damages because Downs' criminal acts were perpetrated during the course of an ongoing escape and were carried out to obtain money and transportation to complete the escape. Finding that plaintiffs' injuries, having occurred some thirteen days after the escape were too remote to fall within the scope of the duty owed to the public by prison custodians, the appellate court reversed the trial court's judgment. Upon writ of review, we found that the state was negligent in allowing the escape and reinstated the trial court's judgment.
The facts of this case leave no doubt that the lower courts were correct to conclude that the negligent supervision provided by the Town of Iota facilitated Gibbs' escape. Immediately prior to his escape, he was being supervised by a non-commissioned officer which was contrary to the requirements set forth by the sheriff's department. Cart's many acts of negligence, including his admission that he purposely left the keys in the ignition of the vehicle used in the escape, lead this court to find that the first two steps of the test enunciated in Wilson have been fulfilled. Additionally, we find that the third tier of the test has been met, because had *1070 Gibbs not escaped, plaintiff would not have suffered injury.
To determine the scope of duty owed by the custodians, the question which must be answered is whether the offense occurred during or as an integral part of the escape. Id. at 493.[4] Although the theft of Alvin Wilson's truck occurred some thirteen days after the inmates had escaped, it was a necessary and integral component of the escape process. The vehicle provided the instrument used by the inmates to elude authorities as they continued their escape. Likewise, the Town of Iota's vehicle used by Gibbs in his escape proved to be a necessary component and facilitated his flight from the authorities. Because Keith Marceaux's damages resulted from Gibbs' escape, we affirmatively answer the question of whether the risk of plaintiff's injuries was within the scope of duty Gibbs' custodians owed to the general public. Therefore, under our query of whether a custodian has a duty to protect the public from acts of ordinary negligence committed by an escapee, we find that custodians do have such a duty when all of the Wilson factors are present.

gross negligence
We now must decide if the appellate court erred when it reversed the trial court's conclusion that Sheriff Goss' gross negligence was a substantial factor which contributed to Gibbs' escape. The court of appeal concluded that the trial court failed to define the term "gross negligence" and reversed that portion of the judgment holding the sheriff's department 5% liable.[5] Instead, they granted the sheriff indemnification because his actions did not equate to gross negligence. The appellate court incorrectly concluded that the amendment to La.R.S. 15:708A(3)(c) did not apply. The amendment of this statute became effective on August 21, 1992, and was therefore binding on October 19, 1992, the date of the escape. The statute states, "No sheriff shall be liable for any loss sustained by any such prisoner, except for those caused by the gross negligence or intentional act of the sheriff or his deputies."
An appellate court should not set aside a trial court's or jury's findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, 617 So.2d 880 (La.1993); See also Rosell v. ESCO, 549 So.2d 840 (La.1989). A reviewing court must do more than just review the evidence which supports or controverts the trial court's findings. It must review the entire record to determine whether the trial court's findings were clearly wrong or manifestly erroneous Stobart at 882.
Deferring to Ambrose, the appellate court concluded that the trial court failed to define what action on the part of the sheriff constituted "gross negligence". Further, the sheriff was absolved from liability because Mayor Frey assured the sheriff, prior to the Town of Iota using Gibbs in the municipal work program that the inmates would be picked up and supervised at all times by a commissioned officer. The record before us shows without question, that the truly responsible party for Gibbs' escape was the Town of Iota. If it were not for the negligent supervision of the prisoners participating in the municipal work program, Gibbs would not have been in a position to escape. Therefore, the appellate court was correct to reverse this patent error made by the trial court.

comparative fault
We next consider whether the appellate court erred by applying Veazey to the trial court's assessment of liability and holding that plaintiff was entitled to recover the full measure of his damages from Gibbs' custodians. We find this conclusion erroneous and reinstate the trial court's determination that the Town of Iota and Gibbs are jointly liable to plaintiff.
In Veazey, the plaintiff was a resident at defendant's apartment complex and was raped within her apartment. Her claim against the owners of the complex was based *1071 on a misrepresentation regarding the amount of security and the number of past criminal acts occurring at the complex, as well as inadequate security. A jury awarded the plaintiff damages against the complex due to its negligence and an appeal followed. Concerned as to the correctness of the appellate court's decision, we granted certiorari to determine whether the fault of an intentional tortfeasor and a negligent tortfeasor can be compared. While we found that our state's comparative fault law is broad enough in an appropriate factual setting to encompass the comparison of negligence and intentional torts, the facts of this case are clearly distinguishable because of the type of culpability involved.
Veazey entailed a thorough discussion of a comparison between a negligent tortfeasor and an individual who had committed an intentional act. Here, the actions which led to plaintiff's injuries were the result of simple negligence of both the Town of Iota and Gibbs. Therefore, Chief Judge Doucet of the Third Circuit Court of Appeal was correct when he noted that there is "no authority for finding that an automobile collision resulting from running a red light, even while intoxicated, is an intentional tort." Marceaux at 1194. Had Gibbs' actions equated to an intentional tort, reliance on Veazey would have been proper, but because this case involves two negligent tortfeasors, the appellate court erred in its conclusion that plaintiff should collect his total damage award from the Town of Iota. The facts of this case show that the trial court correctly held the negligent parties jointly liable to the plaintiff. However, we are further convinced that because Gibbs illegally consumed alcohol, stole a municipal automobile and operated it while heavily intoxicated, then collided with several vehicles before injuring plaintiff, the trial court clearly should have assigned the majority of liability to Gibbs. Therefore, under our rules of manifest error, we amend that portion of the trial judge's ruling and hold that Gibbs is 70% liable to the plaintiff.

DECREE
For the reasons assigned, the appellate court's decision is affirmed concerning the issue of gross negligence of the sheriff of Acadia Parish. However, their application of comparative fault is reversed with the trial court's assessment of liability amended to include 30% liability on the part of the Town of Iota, and 70% liability on the part of Gibbs.
Reversed in part; Amended in part; Affirmed in part.
LEMMON, J., concurs.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
Since plaintiff was injured by Gibbs while in the process of escaping in the town vehicle, I concur in finding the custodian liable. See my dissent in Wilson v. Dept. of Public Safety & Corr., 576 So.2d 490 (La.1991). Accordingly, I respectfully concur.

ON APPLICATION FOR REHEARING
PER CURIAM.
Plaintiff's application for rehearing is granted in part.
In our original opinion, we held that the negligence of defendant Denny Gibbs and the negligence of defendant Town of Iota contributed to the causation of this accident. Based on the conclusion that both defendants were negligent tortfeasors, we erred in failing to correct that part of the judgment of the trial court that held these defendants jointly liable for plaintiff's damages.
Accordingly, we amend our judgment on original hearing to hold that defendant Denny Gibbs and defendant Town of Iota are solidarily liable for plaintiff's damages. La. Civ. Code art. 2324B. In all other respects, the application for rehearing is denied.
NOTES
[*] Pursuant to Rule IV, part 2 § 3, Justice Victory was not on panel.
[1] A motion for directed verdict was granted in favor of Chief Walker at the conclusion of plaintiff's case.
[2] La. R.S. 708 D(2) & (3).
[3] The original award for loss wages in the amount of $11, 960.00 was subsequently amended by the trial court on August 9, 1995.
[4] See also, Edwards v. State, 556 So.2d 644 (La. App. 2d Cir.1990); LeBlanc v. State, Through Dept. of Corrections, 393 So.2d 125 (La.App. 1st Cir.), writ denied, 394 So.2d 1235 (La.1980); Reid v. State, Department of Corrections, 376 So.2d 977 (La.App. 1st Cir.1979), writ denied, 380 So.2d 71 (La.1980).
[5] See court of appeal's opinion at 1193.