JjSAUNDERS, Judge.
Defendant, the Calcasieu Parish Sheriffs Office, seeks supervisory writs from a judgment of the Fourteenth Judicial District Court, denying its motion to strike and exception of no cause of action.

STATEMENT OF THE CASE

Billy Jackson (“Jackson”) was incarcerated at the Calcasieu Parish Correctional Center. On September 29, 2001, he escaped from the facility and hid in an unlocked house on 18th Street in Lake Charles. Later that day, Richarda Mesh (“Mesh”) and Johnette Duhon (“Duhon”) entered this same house on 18th Street to paint the house. When they entered the house, they encountered Jackson who forced them upstairs at knife point. Jackson ordered Mesh to tie up Duhon, who was then forced into a closet. Jackson raped Mesh, then stole her truck and cellular phone and left the house. Jackson used Mesh’s truck to get to Houston, where he was eventually apprehended.
Mesh filed a petition seeking recovery of damages for the harm inflicted upon her by Jackson. In response to the petition, the Calcasieu Parish Sheriffs Office filed an exception of no cause of action and a motion to strike. On December 16, 2002, a hearing was held before Judge Godwin. At the conclusion of the hearing, the trial court denied the exception and motion. Defendant seeks review of the trial court’s ruling by supervisory writ application.

DISCUSSION

Mesh argues the defendant can be held liable for the rape because it was committed during the process of Jackson’s escape. The defendant, on the other hand, | ^contends it cannot be held liable for the rape because it was not an integral part of the escape. In denying defendant’s exception and motion, the trial court stated:
I’m really — after listening to everything that has been said — and I am acknowledging the language in the Green *73 case about “further causal relationship,” but then there are these later cases that have been cited involving a murder and other acts that couldn’t be seen as anything that was required or functionally aided the act of escaping.
And my best take on it, all I can do is give you my better opinion on it, because there will be a whole bunch of other judges look at this before this thing is over with — before this case is concluded. But when I see “during or an integral part of the process of escaping,” I see that as alternatives. And one alternative is temporal. I think one alternative if temporal and the other one is functional. And I do liken it — Mr. DeRosier has analogized or mentioned workmen’s comp; but it has passed through my mind, too, thinking about the hundreds of cases on arising out of or in the course and scope of employment. And one of those can been seen as temporal and the other one as functional. Except in a workers’ comp, it says “and” instead of “or.”
So, here, I conclude on the pleadings that this guy wasn’t through escaping. He — he hadn’t — he wasn’t — hadn’t completed his escape as these cases define “escape,” which I think means more than just getting outside the fence. The guy has got to get to where he is going — because in that other case I quoted earlier, they use the language about somebody who has “already escaped”; and then the exceptional cases in the cases that were cited about the 18-day gap where it was a part of the process. But I think — I conclude in this case on a — and on a broad reading of the petition that it is a cause of action stated under the concept that as of the time of the rape occurred it was still during— temporally still during the escape as evidenced by the fact that under the allegations he continued and stole a truck to keep on going until he apparently, according to the petition, finally — finally settled in Houston.
So, the exception is overruled. And the motion to strike is really moot, and I deny the motion to strike.
Defendant cites Green v. State, Department of Institutions, 91 So.2d 153, 155 13(La.App. 1 Cir.1956) for the following language:
An institution’s duty to restrain a convicted criminal is not based upon the purpose of protecting the general public from all harms that the prisoner might inflict if he were allowed to escape.... There is no more reason for the State to be civilly responsible for the convict’s general misconduct during the period of his escape than for the same misconduct after a legal release, unless there is some further causal relationship than the release or escape to the injuries received.... For the breach of the duty to be a proximate cause of the injury for which recovery is sought, the injury received should be one for the prevention of which the duty exists.
In Green, a 15 year old escaped and then stole a car which subsequently struck plaintiffs. In finding the State was not responsible for plaintiffs’ injuries, the court in Green stated:
We do not believe that the negligent operation of a car then unavailable, to have been the natural and probable and reasonably foreseeable consequences of the initially negligent acts or omissions of State employees; the theft and negligent use being so remote and separated in time and by intervening circumstances from the initial negligence, which allegedly permitted the prisoner to escape his confinement.
Id. at 155.
Defendant asserts Green requires more than a “but for” test. It suggests Mesh *74 must demonstrate a causal connection between the duty owed and the event, i.e., that the damage was part and parcel of the escape. As to the detaining of Mesh and her companion and the theft of the truck and cellular phone, defendant asserts these are arguably linked to the escape. As to the rape, however, defendant asserts it was not part and parcel of the escape.
Defendant also relies on LeBlanc v. State, Department of Corrections, 393 So.2d 125 (La.App. 1 Cir.1980), writ denied, 394 So.2d 1235 (La.1980). In LeBlanc, John Williams had been released from the Louisiana Training Institute and placed in the Community Corrections and Rehabilitation Center, Inc. During his tenure at the rehabilitation center, Williams robbed, beat, and raped the plaintiff. Plaintiff sued the State through the Department of Corrections and the rehabilitation center. The State’s liability was at issue on appeal. In finding no responsibility on the state’s part, the court in Le-Blanc stated the following on rehearing:
On original hearing we held that Williams’ “escape” was purely technical and not caused by the State’s negligence. We now observe that even if Williams’ escape were found to be caused by the State’s negligence, a condition contrary to fact, Mrs. LeBlane could not recover.
The assault on Mrs. LeBlane was not a part of the process of escape. Rather, it was a subsequent and spontaneous act of Williams’ related in no way to his inmate status. Thus, negligence by the State is irrelevant because the circumstances of Williams’ attack precludes recovery by the plaintiff from the State.
Some problems have arisen from the case of Webb v. State, through Department of Institutions, supra. In Webb, an inmate escaped from Angola and some twelve hours later went into the Webb home where he shot the plaintiff. The trial court determined that the inmate was “still in the process of attempting to make good his escape,” and on that basis an award of $15,000 was affirmed. What has happened since Webb is that a plaintiffs emphasis has often been placed on the proximity in time and space of an escaped inmate’s offense to the point of his escape rather than on the proper question of whether the offense, regardless of its time and location, actually was an integral part of the process of escaping, (citations omitted).
John Williams had not “escaped” when he attacked Mrs. LeBlane, and, even if he had, his escape was complete when he left the grounds of the Louisiana Training Institute. There were no law enforcement authorities pursuing him. Any acts of Williams, including the vicious attack on plaintiff, were his sole responsibility.
Id. at 127-28.
IsAnother case cited by defendant is Wilson v. State, Department of Public Safety & Corrections, 576 So.2d 490 (La.1991), in which plaintiffs were robbed by Robert Downs as they arrived home to their trailer located several miles from the prison where Downs had been confined. Downs stole clothing, money, food, weapons, and a truck from the plaintiffs. In addressing whether the state was responsible for the plaintiffs’ damages, the court in Wilson stated:
Custodians of prisoners have a duty to manage the affairs of the prison so as not to create an unreasonable risk of harm to the public. This duty does not encompass all harm inflicted by escapees. Although prison authorities have a duty to prevent inmates from escaping, that duty is intended to protect persons from being harmed by escaping inmates *75 while they are in the process of escaping. The duty is not intended to protect persons from harm inflicted by inmates who have already escaped and who subsequently commit tortious acts in the furtherance of their own pursuits. The state is not the insurer of the safety of its citizens. To recover against a custodian, a plaintiff must prove that the custodian was negligent in the management of the prison, that this negligence facilitated the escape, that the actions of the escapee caused the harm complained of, and that the risk of harm encountered by the particular plaintiff falls within the scope of the duty owed by the custodian, (citations omitted).
In resolving the scope of the duty issue, improper emphasis has occasionally been placed on foreseeability or on the proximity of time and distance between the escape and the escapee’s offense that caused the injury to his victim. The proper question is whether the offense occurred during, or as an integral part of, the process of escaping. (citations omitted) (emphasis added).
The court of appeal, while acknowledging the proper legal precepts, held, nonetheless, that the trial court erred in finding the criminal acts committed by Downs thirteen days after his escape were an integral part of the process of escaping. It determined that “[a]s a matter of policy, the state’s liability should not extend to acts of violence committed by escaped convicts thirteen days after the escape from confinement.” Wilson, 563 So.2d [1251], 1254 [(La.App. 1st Cir.1990)] (citation omitted). The court | (¡concluded the risk that an escaped convict would harm Wilson and Hilliard thirteen days after the escape is “simply too remote to fall within the scope of the custodian’s duty to prevent inmates from escaping.” Id.
We disagree with the conclusion reached by the court of appeal. The record fully supports the trial court’s finding that Downs was dangerous and would be seeking food, clothing, weapons, and transportation to make his way out of Louisiana. Although there is some dispute as to whether it is eight or fifteen miles from the penitentiary, Hilli-ard’s residence is within the normal area of containment set up by prison personnel in the event of a prison break (i.e., the search perimeter). At the time of the incident, the search for Downs and the other two inmates had not been formally abandoned, tending to indicate the defendant’s suspicion Downs remained within the search perimeter. Under these circumstances, we have no difficulty concluding the theft of Wilson’s truck was a necessary and integral component of the escape process. The truck enabled Downs to pass the search zone established by the authorities and greatly facilitated his successful flight from the state. The stolen food, clothing and money further aided in the process of the escape.
We emphasize the primary focus of the inquiry is on the question of whether the acts giving rise to the suit occurred during, or as an integral part of, the process of escaping. The operative word is “process,” since there is no bright-line point of delineation which will satisfactorily assist a court in making the appropriate duty-risk analysis. To focus exclusively on the time expiring after the inmate’s exit from the prison grounds to the point where he victimizes a plaintiff leads to arbitrary cut-off points which serve neither the interests of plaintiffs nor those of the State. The same may be said of the distance involved. If an act committed one hour and one mile from the point of departure is compensa- *76 ble and one committed one month and one hundred miles from the same point is not, we are left without means to draw the line except in some arbitrary fashion unsatisfactory to all concerned. This is not to say considering these factors is impermissible. Rather, they are but two factors among many, which will vary with the circumstances of each case, that should be considered in determining whether the acts for which the plaintiff seeks compensation were committed during, or as an integral part of, the process of escaping, (emphasis added).
|7Id. at 498-94.
Defendant acknowledges the similarity of the facts of Wilson to the instant case, however, asserts Wilson is distinguishable because all of the crimes committed by the escapee in Wilson were directly related to the process of escaping. For the reasons stated below, we disagree.
In opposition to the writ application, Mesh cites Marceaux v. Gibbs, 96-2839 (La.9/9/97), 699 So.2d 1065. In Marceaux, Denny Gibbs was an inmate at the Acadia Parish Detention Center. Gibbs stole the work vehicle of his supervisor and eventually collided with a vehicle in which Mar-ceaux was riding as a guest passenger. The court in Marceaux stated the question was whether the offense occurred during or as an integral part of the escape. In answering the question in the affirmative, the court in Marceaux stated:
Likewise, the Town of Iota’s vehicle used by Gibbs in his escape proved to be a necessary component and facilitated his flight from the authorities. Because Keith Marceaux’s damages resulted from Gibbs’ escape, we affirmatively answer the question of whether the risk of plaintiffs injuries was within the scope of duty Gibbs’ custodians owed to the general public.
Id. at 1070. Mesh places emphasis on the words “during or,” and suggests acts for which the defendant can be held liable may either occur during the escape or be an integral part of the escape.
Mesh acknowledges the Green decision, but points out the first circuit also decided Webb v. State, Department of Institutions, 91 So.2d 156 (La.App. 1 Cir.1957). In Webb, an inmate escaped from Angola with a gun and shot the plaintiff in her home, which was in the vicinity of the prison. In finding liability on the part of the state, the first circuit stated:
Were it not for the State’s negligence, this injury would not have happened. It is definitely foreseeable that convicts | ^escaping through negligence of the State would harm the people in the Anogla area. This injury was directly within the risk area created by the negligence of the State and its employees.
Id. at 162.
Finally, we address Brown v. American Druggists’ Insurance Co., 476 So.2d 881 (La.App. 2 Cir.1985), writ denied, 479 So.2d 365 (La.1985), and writ denied, 479 So.2d 366 (La.1985). In Broum, escapees hid in a shed until the plaintiffs’ parents turned out the light. The escapees then broke into the home, stole cash, car keys, etc., and killed the plaintiffs’ parents. The court in Broum stated it must determine whether the murders were an integral part of the escape. In addressing this issue, the court held:
In order to have any hope of completing their escape, it was essential that Wingo and Glass procure transportation and cash. It was in connection with acquiring these essentials that Glass murdered the Browns, only a few hours following departure from jail and only a few miles from the place of incarceration. Under those circumstances, we conclude that the negligence of the dep *77 uties (imputable to their employer, the sheriff) led to the escape and then to the murder of the Browns. In other words, protection of the Browns from the consequences of the escape was within the duty owed by the sheriff.
Id., 476 So.2d at 882.
As indicated by case law provided above, the key inquiry is whether the offense occurred during, or as an integral part of, the escape. While the defendant is correct in its assertion that it has no duty to protect the general public from all harms that may be inflicted by an escaped prisoner, the law is clear that custodians of prisoners do have a duty to prevent prisoners from escaping. That duty is at least partially intended to protect the general public from harms that may be inflicted by inmates while they are in the process of escaping.
| a Jackson encountered Mesh and Duhon on the day of his escape, while hiding in a house relatively close to Calcasieu Parish Correctional Center. Additionally, Jackson stole Mesh’s cell phone and truck for the specific purpose of furthering his escape from the correctional center. The detaining of Mesh and Duhon, as well as the alleged rape of Mesh, occurred in the process of Jackson stealing Mesh’s truck, an act specifically in furtherance of Jackson’s then ongoing escape from the correctional facility. The defendant argues that the rape itself did not directly further Jackson’s escape, and, therefore, it is not liable to Mesh for her attack. We find this argument to be without merit.
Unlike the case law cited by the defendant, the injuries and offenses suffered by Ms. Mesh clearly occurred while Jackson was further facilitating his escape, and are precisely the type of harm that falls within the scope of the duty owed to the public by a custodian of prisoners. We find the circumstances in the present matter to be similar to those in Brown. The murders in Brown occurred during the process of the escapees acquiring transportation and cash. Similarly, the rape in the instant case occurred during the process of Jackson acquiring transportation by stealing Mesh’s truck. Therefore, we find the trial court correctly denied defendant’s exception of no cause of action and motion to strike with respect to the alleged rape of plaintiff by Jackson. Accordingly, the writ is denied. All costs of this writ are assigned to the defendant.
WRIT DENIED.